```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
MARILYN VIVIAN ALVAREZ,                  :
                                         :
                Plaintiff,               :
                                         :   11 Civ. 7298 (DLC)
        -v-                              :
                                         :   OPINION & ORDER
COMMISSIONER OF SOCIAL SECURITY,         :
                                         :
                Defendant.               :
                                         :
----------------------------------------X
```

APPEARANCES

For the plaintiff:
Christopher J. Bowes, Esq.
54 Cobblestone Drive
Shoreham, New York 11786

For the defendant:
John E. Gura, Jr.
Assistant United States Attorney, for
Preet Bharara
United States Attorney for the
Southern District of New York
86 Chambers Street, 3d Floor
New York, New York 10007


DENISE COTE, District Judge:

    Plaintiff Marilyn Vivian Alvarez ("Alvarez") brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking to challenge a final decision of the Commissioner of the Social Security Administration (the "Commissioner"). The Commissioner found that plaintiff was not eligible for Supplemental Security Income ("SSI") disability

benefits.  Alvarez and the Commissioner cross-moved for judgment on the pleadings.  The motions were fully submitted on September 26, 2012.  For the following reasons, the Commissioner's motion is granted and the plaintiff's motion is denied.

BACKGROUND

Alvarez was born in 1962, and attended school until the 11th grade.  She lives with her three children, aged 13 to 16, and previously worked as a cashier/counterperson, security guard, and waitress.  On November 20, 2008, Alvarez filed an application for SSI, alleging disability beginning September 20, 2008.  Specifically, Alvarez asserted that she suffers from hypertension, depression, asthma, arthritis, anxiety, suicidal thoughts, mood swings, obsessive compulsive disorder, and pain in her left knee, both elbows, lower back, and neck.  Alvarez also complained of significant side effects from the various medications that she takes for her psychological and physical ailments.  These medications include: Seroquel, acetoaminophen with codeine #3, mirtazapine, buspirone, Celexa, Advair, and Zolpidem.  Alvarez reports that she has attempted suicide four times, two of which resulted in hospitalization.  Alvarez has a son with attention deficit disorder who receives SSI benefits.

The claim was denied on February 27, 2009.  Alvarez filed a request for hearing before an administrative law judge ("ALJ")

on March 10, 2009.  On February 19, 2010, Alvarez appeared at an administrative hearing in New York City presided over by ALJ Susan Wakshul.  A vocational expert also testified at the request of the ALJ.

On March 22, 2010, ALJ Wakshul denied Alvarez's December 2008 application for benefits.  Alvarez filed a request for review of the ALJ decision, and on August 23, 2011, the Appeals Council denied review, rendering the ALJ's decision the final decision of the Commissioner.  This petition followed.

## DISCUSSION

I. The ALJ's Decision

The Commissioner will find a claimant disabled under the Act if the claimant demonstrates the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant's impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).  The disability must be "demonstrable by medically acceptable

3

clinical and laboratory diagnostic techniques." Id. § 423(d)(3).

The Commissioner uses a five-step process when making disability determinations. See 20 C.F.R. §§ 404.1520 & 416.920. The Second Circuit has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183-84 (2d Cir. 2003) (citation omitted). A claimant bears the burden of proof as to the first four steps, while the Commissioner bears the burden in the final step. Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998).

When evaluating the severity of mental impairments to determine whether they constitute a per se disabling condition at step three, the regulations require that the Commissioner

4

rate and document the extent to which those impairments limit the claimant's functioning along four broad axes: "(1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation."  Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir. 2008) (citing 20 C.F.R. § 404.1520a(c)(3)).  In order for the Commissioner to find that a claimant is per se disabled as a result of an affective disorder or an anxiety related disorder, the regulations require, inter alia, that the condition satisfy the elements of either paragraph B or paragraph C of Listings 12.04 or 12.06, respectively.  Paragraph B of both listings requires a finding that the symptoms of the condition result[] in at least two of the following:

  1. Marked restriction of activities of daily living; or

  2. Marked difficulties in maintaining social functioning; or

  3. Marked difficulties in maintaining concentration, persistence, or pace; or

  4. Repeated episodes of decompensation, each of extended duration;

See 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04B, 12.06B (the "Paragraph B Criteria").

Applying the framework set forth above, the ALJ concluded, as noted, that Alvarez did not qualify for disability benefits. After acknowledging that Alvarez has not been gainfully employed

since November 20, 2008, the ALJ found, at step two, that she suffers from the following severe impairments: osteoarthritis; hypertension; asthma; depression; and anxiety.

At step three, however, the ALJ concluded that, whether considered separately or in combination, these impairments do not meet or medically equal the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1.  In particular, as relevant here, the ALJ concluded that the plaintiff's mental impairments did not qualify as a disabling mental disorder when analyzed in light of the four Paragraph B Criteria.

With respect to the first criterion, the ALJ found that Alvarez's mental conditions imposed "at most a mild restriction" on her ability to carry out activities of dialing living.  She noted that Alvarez continued to cook frequently, managed the household finances for herself and her three children, and had not alleged a loss of interest in her personal care.  The ALJ noted that to the extent Alvarez suffered from any limitations in the first functional area, they were "more easily attributable to her alleged osteoarthritic pain."

As for social functioning, the ALJ noted that Alvarez claimed a reluctance to leave home alone or take transportation by herself.  Nonetheless, Alvarez's medical records indicated that she had been cooperative with the physicians who had treated her, maintained a relationship with an ex-boyfriend,

6

attends group therapy and socializes with friends.  Accordingly, the ALJ concluded that the evidence did "not suggest more than a moderate limitation in social functioning."

Although Alvarez claimed that she did not always remember things and sometimes found it difficult to follow a soap opera, the ALJ found that her mental impairments caused "no more than a moderate restriction" in her ability to maintain concentration. In so concluding, the ALJ relied not only on the opinion of Alvarez's treating psychiatrist, Dr. Phyllis Bogard, but also on Alvarez's own testimony that she managed the household finances. Finally, the ALJ found that Alvarez had suffered, at most, one episode of decompensation and "no evidential basis for a finding of 'repeated' episodes."

The ALJ then turned to consider Alvarez's residual functional capacity.  In light of the findings outlined above regarding the severity of Alvarez's mental impairments, the ALJ concluded that Alvarez retained the residual functional capacity to perform light work, provided she be permitted to sit and stand at will.  Because Alvarez's prior jobs as a cashier, waitress, and security guard would impose demands on her beyond her residual functional capacity, the ALJ considered whether there were nonetheless jobs in the national economy that Alvarez could perform.  The ALJ concluded that given Alvarez's age, work experience, education and residual functional capacity, there

7

existed in the national economy a significant number of jobs that she could perform.  Accordingly, the ALJ denied Alvarez's claim for benefits.

DISCUSSION

I.   Standard of Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  A determination of the ALJ may be set aside only if it is based upon legal error or is not supported by substantial evidence.  Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).  "Substantial evidence" is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Furthermore, if the findings of the Commissioner as to any fact are supported by substantial evidence, those findings are conclusive.  Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995).  "Where there is substantial evidence to support either position, the determination is one to be made by the fact finder." Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990).

Alvarez's petition for review argues that the ALJ's

decision denying her benefits was erroneous for two reasons. First, Alvarez argues that the ALJ improperly discounted the opinion of Alvarez's treating physician regarding her ability to maintain concentration, persistence or pace.  Second, she argues that the ALJ failed to appropriately weigh Alvarez's testimony regarding her inability to travel and the side effects of her medication in making a finding with respect to her residual functional capacity.  Neither argument has merit.

II.  Treating Physician's Opinion

With respect to the first argument,

> [t]he SSA recognizes a "treating physician" rule of deference to the views of the physician who has engaged in the primary treatment of the claimant. According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given "controlling weight" so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (citation omitted).  Where an ALJ refuses to accord controlling weight to the medical opinion of a treating physician on the basis of contradictory evidence or reservations about the physician's techniques, she must explain the reasons for that decision.  20 C.F.R. § 404.1527(d)(2).

Alvarez argues that the ALJ's conclusion that her mental impairments caused "no more than a moderate restriction" in her

ability to maintain concentration, persistence or pace, failed to give controlling weight to the opinion of Dr. Bogard.  In particular, Alvarez notes that the record contains a report prepared by Dr. Bogart in which the doctor noted that she was "seriously limited, but not precluded" in performing several functions related to concentration, including: carrying out short and simple instructions, maintaining attention for two hour segments, and working in coordination with others without being unduly distracted.  Alvarez notes that in other contexts, the U.S. Court of Appeals for the Tenth Circuit has concluded that "'seriously limited but not precluded' is essentially the same as the listing requirements' definition of the term 'marked.'"  Cruse v. U.S. Dept. of Health & Human Svcs., 49 F.3d 614, 618 (10th Cir. 1995).

Notably, however, the report prepared by Dr. Bogard explicitly required her to rate Alvarez's "difficulties in maintaining concentration, persistence or pace" as: "mild," "moderate," "marked" or "extreme."  Dr. Bogard chose "moderate," rather than "marked" or "extreme."  Thus, whatever significance the statement "seriously limited, but not precluded" may have in other contexts, the holding of Cruse cannot apply here, where the treating physician was given the opportunity to evaluate the claimant's limitations along the criteria set out in the listing requirements, designated them as "moderate" as opposed to

10

"marked," and that determination was confirmed by the ALJ with reference to other evidence in the record.  There is thus no contradiction between the ALJ's finding and Dr. Bogard's diagnosis, nor any reason to overturn the ALJ's finding on this basis.

II.  Travel Limitations and Side-Effects of Medication

Alvarez's second argument fares no better.  Although the argument is labeled as an objection that the "ALJ failed to make proper credibility findings," Alvarez argues in substance that the ALJ's decision gave insufficient weight to her testimony that she cannot use public transportation independently and experiences dizziness and exhaustion on account of the many medications she takes.

Alvarez is correct that in assessing whether a claimant is disabled, the Commissioner is required to take the claimant's reports of pain and other limitations into account in making a finding as to disability.  20 C.F.R. § 416.929.  But, "as with any finding of fact, 'if the Secretary's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'"  Escalante v. Astrue, No. 11 civ. 375 (DLC), 2012 WL 13936, at *8 (S.D.N.Y. Jan. 4, 2012) (quoting Aponte v. Sec'y Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)).  In this case, the ALJ explicitly considered Alvarez's

11

complaints in rendering her decision, but concluded that those considerations were outweighed by other specific evidence in the record. In any case, Alvarez does not argue that the ALJ's ultimate findings were not supported by substantial evidence.

## CONCLUSION

The Commissioner's September 12 motion for judgment on the pleadings is granted. The plaintiff's July 26 motion for judgment on the pleadings is denied. The Clerk of Court shall close the case.

Dated:   New York, New York
         December 18, 2012

                              _____
                                      DENISE COTE
                              United States District Judge